No. 53,042

STATE OF KANSAS, *Appellee,* v. GEORGE DAN POULOS and SALVADORE S. PEREZ, a/k/a JOHNNY M. PEREZ, *Appellants.*

(639 P.2d 477)

Opinion filed January 15, 1982.

*Stephen M. Joseph,* of Joseph, Robison & Anderson, of Wichita, argued the cause and was on the brief for appellant Poulos; *Lyle W. Britt,* of Lyle W. Britt, Chartered, of Wichita, argued the cause and was on the brief for appellant Perez.

*Jack Peggs,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, *Dan Trent,* legal intern, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendants, George Dan Poulos and Salvadore S. Perez, following their conviction by a jury in Sedgwick District Court of aggravated robbery, K.S.A. 21-3427. Defendants claim that the trial court erred (1) in admitting all of a 54-minute tape recording into evidence; (2) in allowing the tape to be taken into and replayed in the jury room; and (3) in refusing defendants' requested instruction that specific intent to permanently deprive is an element of aggravated robbery.

Poulos and Perez met with a man named Meyers in an apartment in Wichita for almost an hour on April 14, 1980. The purported purpose of the meeting was to negotiate the purchase by defendants of a large amount ($20,000 to $30,000 weekly) of food stamps. Meyers, posing as an out-of-town seller, was an undercover police officer. The lengthy conversation was electronically monitored and tape recorded by other officers in a

nearby apartment. During the extended discourse, the defendants made reference to their past criminal conduct, their contacts with notorious persons, and criminal charges then pending against them. There was much discussion about a possible "rip-off." Throughout the discussion food stamps were sometimes referred to as "money." About 50 minutes into the conversation, defendants became suspicious of Meyers. Poulos pulled a gun and threatened to kill him. Perez, at the direction of Poulos, shook Meyers down, removed Meyers' gun from his pocket, and took it. Poulos demanded "the money," apparently meaning the food stamps. At that point other officers broke in to the apartment and arrested the defendants; both were charged with the aggravated robbery of Meyers.

The trial court, over vigorous defense objection, admitted the entire tape into evidence, and it was played for the jury. The court, at defendant Poulos' request, gave a limiting instruction, telling the jury that statements made in the tape indicating that the defendants may have committed other offenses "are not to be considered by you as proving inclination, tendency, propensity, or disposition to commit the crimes charged or in any way bearing upon the guilt of the crime charged."

Defendants first contend that all of the tape excepting the last few minutes thereof, when Meyers' gun was being taken and the defendants were being arrested, should have been excluded and excised by the trial court. They argue that the court should have balanced possible prejudice against probative value and having done so should not have admitted the bulk of the tape. They contend it was inadmissible under K.S.A. 60-455. The State argues that the entire tape was relevant and was admissible as part of the *res gestae.*

In *State v. McDaniel & Owens,* 228 Kan. 172, 612 P.2d 1231 (1980), we observed that in certain instances Kansas case law permits admission of prior crimes evidence independent of K.S.A. 60-455. We said:

"Acts done or declarations made before, during or after the happening of the principal occurrence may be admissible as part of the *res gestae* where the acts are so closely connected with it as to form in reality a part of the occurrence. *State v. Gilder,* 223 Kan. 220, 228, 574 P.2d 196 (1977); *State v. Ferris,* 222 Kan. 515, 517, 565 P.2d 275 (1977)." p. 176.

See also *State v. Schlicher,* 230 Kan. 482, 639 P.2d 467 (1982).

The tape accurately discloses the entire discourse and events leading up to the robbery of Meyers: the purpose of the meeting; Poulos' and Perez's "standing" in the community; the necessity for Meyers, an outsider, to do business with them; the possibility of a rip-off; and the roles of Poulos and Perez as the aggressors. It corroborates Meyers' testimony, negates any threat by him, and refutes defendants' claim of self-defense. It was not remote, but led up to and included the acts out of which the charges arose. Of course the evidence is prejudicial; it is strong if not damning evidence emanating from the mouths of the defendants; but it is clearly part of the *res gestae,* constituting one continuous occurrence. The trial judge, as defendants suggest, has discretion to exclude evidence when its probative value is outweighed by its prejudicial effect on the jury. See *State v. Reynolds,* 230 Kan. 532, 639 P.2d 461 (1982), and authorities therein cited. In the case before us, however, the conversation leading up to the commission of the offense has considerable probative value. The court properly gave a limiting instruction to the jury in order to guard against any possible prejudice. We hold that the entire tape was admissible. The trial judge did not abuse his discretion, and did not err in admitting it.

A related issue is whether the court erred in permitting the jury to take the tape to the jury room and to replay it there. The tape was a properly admitted exhibit. Exhibits are usually and customarily given to the jury, to be examined during deliberations. Such a matter is within the trial court's discretion, and its action will not be disturbed in the absence of abuse of discretion. See *State v. Fenton,* 228 Kan. 658, 667, 620 P.2d 813 (1980), where we said:

"Once a case is submitted to the jury for deliberations, the jury is ordinarily given the exhibits to take into the jury room where the jurors can examine the exhibits as many times as they desire. . . . The manner in which exhibits are handled at trial is within the trial court's discretion, and will not be disturbed except in cases of abuse."

The tape was an exhibit, made before trial and contemporaneously with the offense and the arrest; it was not a transcript of trial testimony. Under the circumstances we find no abuse of discretion in permitting the tape to be sent to the jury room or for the jury to examine it and listen to it.

Finally, defendants contend that the trial court erred in failing to instruct the jury that one of the elements of aggravated robbery is a specific intent to permanently deprive the victim of the property taken. They contend that there is a split of authority in the Kansas appellate courts on the subject, this court in *State v. Thompson,* 221 Kan. 165, 174-75, 558 P.2d 1079 (1976), holding that it is not, and the Court of Appeals in *State v. Antwine,* 4 Kan. App. 2d 389, 396-99, 607 P.2d 519 (1980), holding that it is. Defendants' reliance on *Antwine* is misplaced. That case involved the failure to instruct on theft as a lesser included offense under the evidence in a robbery case. Here the evidence would not support such an instruction.

We adhere to our decision in *Thompson:* intent to permanently deprive is not an element of the offense of robbery. See *State v. McDaniel & Owens,* 228 Kan. at 177, for more recent authority. We find no error in the trial court's instruction.

The judgment is affirmed.