No. 53,635

STATE OF KANSAS, *Appellee,* v. ALVIN F. GRAUERHOLZ, *Appellant.*

(654 P.2d 395)

Opinion filed December 3, 1982.

*Tom Crossan,* of Independence, argued the cause and *Robert C. Claus,* of Independence, was with him on the brief for appellant.

*William J. Craven,* of Lawrence, argued the cause and was on the brief of guardian/conservator on behalf of appellant.

*Sally Davis Pokorny,* assistant county attorney, and *Glenn E. Casebeer,* assistant county attorney, argued the cause; *Robert T. Stephan,* attorney general, was with *Sally Davis Pokorny* on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: The defendant, Alvin F. Grauerholz, appeals from his conviction by a jury in Montgomery District Court of two charges of felony theft, K.S.A. 21-3701, arising out of substantial

shortages of funds in two estates of which he was executor. The issues presented are: whether it was error not to permit exhibits to be shown to the jury during trial; whether the conduct of a psychiatrist who examined the defendant violated defendant's constitutional rights; whether Count I of the information was barred by the statute of limitations; whether it was error to refuse to let defendant call and examine jurors during the hearing on his motion for a new trial; whether this court should abandon the *M'Naghten* rule and adopt the A.L.I. rule; and whether the evidence was sufficient to support the verdict.

Alvin F. Grauerholz was for many years a practicing attorney in Coffeyville, Kansas. On January 14, 1975, he was issued letters testamentary as executor of the estate of General George Wark, deceased. Count I of the information charges the defendant with the theft of funds from that estate. The evidence disclosed that from February 4, 1975, to and including February 9, 1979, the defendant wrote, signed, and negotiated various checks upon the Wark Estate trust account. The funds received (more than $53,000) were deposited in either the defendant's trust account or in his office account. His secretary prepared all checks for payment of the funeral bill, taxes, and other usual expenses of an estate; she did not prepare nor did she have any knowledge of the checks written by the defendant. In 1977, defendant caused to be prepared and filed a preliminary accounting for the Wark estate. No irregular withdrawals, transfers of funds from the estate trust account, or other irregularities were disclosed. When the matter came on for final settlement, defendant appeared in court without any bank statements or other supporting records; he secured a continuance, appeared on the appointed day, but still failed to bring the records with him. He testified that some $13,000, which should have been in the Wark estate trust account, was not there but was in his office trust account; the latter statement was not true—the funds were not in defendant's office trust account. Defendant attributed the problem to his bad bookkeeping. On January 23, 1980, he was removed as executor of the Wark estate. It was later determined by the administrator de bonis non c.t.a., that there was a shortage in the Wark estate of approximately $53,600.00.

Count II of the information charges the defendant with the theft of funds from the estate of Emily J. Patterson, deceased. He

was the named executor, and letters testamentary were issued to him on October 24, 1978. He paid the funeral expenses out of the estate funds, then withdrew varying amounts which he deposited in his own general account or his law office account. He closed out the decedent's savings account in the amount of some $3,293.00. A check was written to the defendant by the First Federal Savings and Loan for the amount of this account; it was endorsed by him, but those funds never found their way into the Emily J. Patterson estate. The defendant was removed as executor of that estate and an administrator was appointed on March 20, 1980. The administrator testified that the defendant had withdrawn funds from the Patterson estate account in the amount of $10,200; that sum, together with the proceeds of the savings account, was missing. The defendant's total defalcation in the Patterson estate amounted to some $13,493.00.

The trial took approximately 13 days. All of the court records in the two estates were received in evidence, together with all of the checks, bank statements, and accounts. Defendant pled not guilty and not guilty by reason of insanity. Two psychiatrists testified for the defense that in their opinion the defendant was insane and did not know the difference between right and wrong at the time the thefts occurred. One psychiatrist testified for the State; he reached the opposite conclusion, voicing the opinion that the defendant knew the difference between right and wrong during all of the relevant time periods. The jury returned a verdict of guilty on both charges.

Defendant first contends that the trial court erred in refusing to allow counsel to pass all of the exhibits to the jury before submission of the case to the jury. The trial court refused to permit counsel to pass each exhibit to the jury upon introduction; however, counsel was permitted to read at length from each exhibit and to discuss each exhibit fully with the witnesses. Checks, endorsements, bank statements, deposit slips, accounts and the various probate files were read and discussed at length before the jury; the germane parts of all of the documents were thus fully presented to the jury during trial. All of the exhibits were sent with the jury to the jury room and remained there during deliberations.

Defendant relies primarily upon an Indiana case, *Micks v. State,* 249 Ind. 278, 230 N.E.2d 298 (1967), wherein the appellate

court criticized the trial court for interpreting an exhibit for the jury, rather than permitting the exhibit to be read in full or passed to the jury so that each juror could make his or her own interpretation. We do not find the opinion persuasive under the facts of this case, where the exhibits were read at length and fully discussed, and where the exhibits themselves were ultimately sent to the jury room where the jurors could examine them at their leisure. The case is clearly distinguishable.

We have held, in a recent case, that the manner in which exhibits are handled at trial is within the trial court's discretion, and the court's decision will not be disturbed because of the manner in which the exhibits were handled except in cases of abuse. *State v. Fenton,* 228 Kan. 658, 667, 620 P.2d 813 (1980). The trial court here exhibited extreme patience and granted counsel wide latitude in reading and discussing the exhibits in minute detail.

The exhibits ranged from very material items, such as cancelled checks and bank statements, to those that were inconsequential if not immaterial, such as a turn-of-the-century family album and mid-1930's dues cards. Had the trial court permitted each of the jurors to examine each of the hundreds of exhibits, the trial would have been greatly extended and regularly interrupted, without benefit to either defendant or the State. As is the normal practice in this state, the exhibits were sent to the jury room at the time the jurors retired to deliberate. See *State v. Fenton,* 228 Kan. at 667, and *State v. Poulos & Perez,* 230 Kan. 512, 514, 639 P.2d 477 (1982). We find no abuse of discretion and no error.

Defendant next contends that his right to be represented by counsel, to be secure from self-incrimination, and other constitutional and statutory rights were violated to such an extent that he was denied a fair and impartial trial. His argument in support of this claim centers around the procedure followed in requiring him to submit to a mental examination, and the report of the physician who examined him.

During a pretrial conference in March, 1981, the State requested that defendant be given a mental examination pursuant to K.S.A. 22-3219, which provides, in applicable part, that:

"(2) A defendant who files a notice of intention to rely on the defense of insanity thereby submits and consents to abide by such further orders as the court may make requiring the mental examination of the defendant and designating the place of examination and the physician or physicians by whom such examination

shall be made. . . . A report of each mental examination of the defendant shall be filed in the court and copies thereof shall be supplied to the defendant and the prosecuting attorney."

The State asked that Warren G. Phillips, M.D., be named as the examining physician. The trial court sustained the motion, but no written order was ever filed. Defendant appeared as directed, and was examined on March 30, 1981. Dr. Phillips submitted his report, dated April 21, 1981, which included a cover letter to Glenn Casebeer. Copies of the report and cover letter were sent to defense counsel on April 27, 1981. The cover letter points out that the defense will contend that the defendant was incompetent towards the end of 1979 and the early part of 1980; that defendant was declared incompetent and a guardian was appointed for him by a local court during this period; that prior to that time the defendant himself felt that he was competent; and that the defense may well have many impressive character witnesses. The cover letter, Exhibit 6-K's, and now included as a part of Record Volume 32, was offered jointly by both counsel, and was thus received in evidence without objection. Both in the report and in his testimony, Dr. Phillips concluded that the defendant was competent throughout the entire period of his handling of the Wark and Patterson estates.

The statute does not require a written order directing a mental examination, although that is the usual procedure. The defendant voiced no objection to the State's motion for an examination, complied with the order, and promptly received a copy of the report of the examining physician and his cover letter. We see no prejudice arising from the bare fact that the order was not reduced to writing.

Dr. Phillips' report and cover letter disclose no facts which were confidential communications from the defendant to the physician; to the contrary, all of the statements made therein allude to matters which were well known both to the prosecutor and to defense counsel. Defendant's first and only objection to the testimony of the doctor or to the cover letter came on July 21, during the trial, after the jury had heard both the direct examination and at least half of the cross-examination of Dr. Phillips. In that objection, defense counsel asked that the court dismiss the case and discharge the defendant or, in the alternative, that the court strike the testimony of Dr. Phillips from the record and

declare a mistrial. We have examined the testimony of the physician, together with his report and cover letter, and find nothing therein which would require the relief requested by defendant in his motion.

The defendant makes much of the fact that Dr. Phillips was not instructed by written order of the trial court that he was to make a psychiatric examination of the defendant as an impartial expert appointed by the court. Dr. Phillips was suggested by the county attorney; presumably the county attorney made contact with the expert before asking the court to appoint him to make the examination. We see nothing erroneous or prejudicial. Under K.S.A. 22-3219, the trial court is empowered to appoint a physician to make a mental examination; the expert may well be one suggested by the prosecution, since the defendant—as in this case—may already have selected and consulted psychiatrists of his own choosing or may have secured the services of such experts through *ex parte* proceedings under K.S.A. 22-4508, as amended by Chapter 142, Section 18, 1982 Laws of Kansas, and K.S.A. 22-3219. It is clear that Dr. Phillips was appointed to make the examination upon the motion and suggestion of the prosecutor; his testimony came as no surprise to the defendant. Such procedure was entirely appropriate. Rule 12.2(c) of the Federal Rules of Criminal Procedure similarly provides for a psychiatric examination, "upon motion of the attorney for the government," in appropriate cases. Such rules are common and their constitutionality has been sustained. See the full text of the Advisory Committee note to Fed. R. Crim. P. 12.2, 3A Wright, Federal Practice and Procedure: Criminal, at 476 (2d ed. 1982), and 62 F.R.D. 298.

Defendant contends, for his third point, that Count I of the information was barred by the two-year statute of limitations, K.S.A. 21-3106(2). The State's evidence indicated that the defendant transferred money out of the Wark estate account at various times from February 4, 1975, to and including February 9, 1979. This prosecution was commenced with the filing of the information on October 16, 1980, and the amended information upon which defendant was tried was filed on October 30, 1980. Clearly, the transfer on February 9, 1979, was within the two-year period.

K.S.A. 21-3106(3)(c) also provides that "The period within which a prosecution must be commenced shall not include any

period in which: . . . (*c*) The fact of the crime is concealed." In *State v. Gainer,* 227 Kan. 670, 608 P.2d 968 (1980), the defendant had stolen two guns. He hid them for a time and thereafter used them as his own. The theft was not discovered for more than two years. We held that the crime of theft by obtaining or exerting unauthorized control over property with intent to deprive the owner permanently of the possession, use or benefit of his property as proscribed in K.S.A. 21-3701(*a*) is not a continuing offense. We also held that the defendant's act of hiding the guns did not constitute concealment as contemplated by K.S.A. 21-3106(3)(*c*). We said:

"Hiding or disposing of the property stolen does not constitute concealment of the fact of the crime as contemplated in the statute. To hold otherwise would extend the statute of limitations beyond its stated term in practically every case of theft and this would lead to uncertainty in an otherwise certain provision of the statute of limitations. Concealment of the fact of the crime refers to concealment of those criminal acts which constitute the crime. Hiding or disposing of the property stolen does not constitute concealment of the fact of the crime. To constitute concealment of the fact of the crime of theft sufficient to toll the statute of limitations there must be a positive act done by or on behalf of the accused calculated to prevent discovery of the theft by those owning or having possession of the property before the theft. Mere silence, inaction, nondisclosure, or disposal of the stolen property is not concealment of the fact of the crime as contemplated in K.S.A. 21-3106(3)(*c*)." 227 Kan. at 674-675.

Defendant contends that he did not conceal the fact of the crime. We disagree. As executor, defendant filed a lengthy preliminary accounting on November 29, 1977. He did not show, among the disbursements made by him from the estate, the large number of sizeable checks which he had drawn on estate funds and deposited in his own bank accounts. He did not show the funds which were then on deposit in the Wark estate bank account. The withdrawals from the Wark estate throughout the protracted pendency of that matter were all made by checks drawn personally by the defendant; his secretary, who prepared the usual executor's checks and accounts, had no knowledge of them. Further, when requested by the judge to produce his bank and accounting records, the defendant twice failed to do so. Finally, the defendant ignored repeated requests from other interested counsel for information about the Wark estate. We conclude that the defendant's continuing course of conduct, including his preparation and execution of the checks in a furtive manner, his preparation and filing of an incomplete and inaccu-

rate preliminary accounting, and his refusal to produce financial records, constituted sufficient conduct evidencing a design to conceal the ongoing thefts. His acts did not amount to "mere silence, inaction, nondisclosure, or disposal of the stolen property." The two-year statute of limitations was thus tolled by defendant's active concealment of the facts of the crime.

The fourth claim of error asserted is that the trial court erred in refusing to permit the defendant to call three jurors to testify on the hearing of defendant's motion for a new trial. This claim is based upon the affidavit of one of the jurors, which recited in substance that the juror was 67 years of age, that he was tired, sick, and hungry, and that he held out for an acquittal until the final vote. He also complains that the exhibits were not passed to the jury during trial. The cases relied upon by the defendant are easily distinguishable and are not persuasive. Clearly, there is nothing in the juror's affidavit which indicates that anything occurred either inside or outside the jury room which would bear on the validity of the verdict. K.S.A. 60-441 expressly prohibits inquiry into the reasoning or mental processes of the jury. That the juror was persuaded by other jurors to join in the verdict, and that he did join in the final verdict, is clear from the affidavit. The trial court did not err in refusing to permit the defendant to subpoena jurors, based upon the record before it. We find no error.

Finally, defendant contends that the application of the *M'Naghten* rule in this case unduly prejudiced him, and that this court should adopt the A.L.I. definition of insanity. This court has consistently refused to adopt any test other than the *M'Naghten* test for insanity, and we steadfastly adhere to our prior opinions on the subject. *State v. Topham,* 231 Kan. 167, 642 P.2d 986 (1982); *State v. Dargatz,* 228 Kan. 322, 614 P.2d 430 (1980); *In re Jones,* 228 Kan. 90, 612 P.2d 1211 (1980); and *State v. Sanders,* 225 Kan. 147, 587 P.2d 893 (1978). What we said in *In re Jones,* 228 Kan. at 99, is relevant here:

"The *M'Naghten* rule is the law of this state. If degrees of insanity were placed on a scale of one to ten in ascending order of severity, those failing the *M'Naghten* test are all 'tens.' To fail the *M'Naghten* test one must not have understood the nature of his acts or that such acts were wrong — the so-called right and wrong test. Generally speaking, evidence that a defendant attempted to conceal the crime or his identity as the perpetrator thereof goes a long way to defeat an insanity defense."

We should point out that evidence of one's mental state is admissible on the subject of intent, and the defendant was permitted to introduce all of the evidence he wished, in order to show his mental capabilities throughout the period involved herein. The ultimate issue, however, is that posed by the *M'Naghten* test, and the jury was properly and fully instructed in that regard. By its verdict, the jury found that the defendant knew that it was wrong when he diverted funds from the Wark and Patterson estate accounts into his own; in short, the jury rejected the proffered insanity defense.

As indicated earlier in this opinion, a guardian and conservator was appointed for the defendant in 1981. The guardian-conservator was granted leave to file a brief, and did so. He points to the following language from Syl. ¶ 2 of our opinion in *State v. Dargatz,* 228 Kan. 322, which reads:

"Although a mental illness or defect not amounting to legal insanity is not a defense, since, for purposes of the capacity to commit crime, degrees of mental abnormality are not recognized, where the crime charged requires a specific intent, evidence of a mental defect which negates the specific intent is admissible."

He then argues that the jury should have been given a special instruction on diminished capacity. Not so. In the *Dargatz* opinion, at page 332, we said: "The doctrine of diminished mental capacity, while never specifically rejected by this court, is inconsistent with the law of this state *and we decline to adopt it.*" (Emphasis added.) As we said in the *Dargatz* syllabus, *evidence* of mental defects is admissible; but the instruction now proposed by the guardian-conservator is not the law of this state and should have been rejected if it had been proposed at trial.

Next, the guardian-conservator argues that the evidence is insufficient to support the verdict, and in particular to support a finding that the defendant had the specific intent required. The standard of review which we must apply is whether the evidence, viewed in the light most favorable to the prosecution, convinces us that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. See *State v. Douglas,* 230 Kan. 744, 745, 640 P.2d 1259 (1982), and cases cited therein. Having reviewed the voluminous evidence, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt, and could have found that the defendant had

the specific intent included within the elements of the offenses with which he was charged.

Finally, the guardian-conservator argues that the trial court should have instructed the jury on the lesser included offenses of attempted theft or unlawful deprivation of property. The trial court had a duty to instruct on lesser included crimes "of which the accused might be found guilty under the information or indictment and *upon the evidence adduced* . . . ." (Emphasis supplied.) K.S.A. 21-3107(3). We have held that this duty arises, however, only if the evidence would have justified a conviction of one of those offenses. *State v. Masqua,* 210 Kan. 419, 502 P.2d 728 (1972), *cert. denied* 411 U.S. 951 (1973). An attempt is defined by K.S.A. 21-3301(1) as follows:

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime *but fails in the perpetration thereof* or is prevented or intercepted in executing such crime." (Emphasis added.)

There is no evidence that the defendant failed in the perpetration of the crimes charged; the completed crimes were clearly established. Where the crime charged is completed, there is no call for an instruction on attempt. *State v. Buggs,* 219 Kan. 203, 206, 547 P.2d 720 (1976).

Unlawful deprivation of property, a class A misdemeanor, is defined by K.S.A. 21-3705 as follows:

"Unlawful deprivation of property is obtaining or exerting unauthorized control over property, with intent to deprive the owner of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of his property."

An accused has the right to have his theory of the case presented to the jury, and where there is evidence to support a lesser included offense, the court should instruct upon it. Here, however, there was no evidence that the defendant intended to float an unauthorized temporary loan from the estates, or that he intended to return the money after a short period. He took the money from the estates, deposited it in his own accounts, and spent it; there was nothing left to return. His defense was either that he did not take the money, or that if he did take it he didn't know what he was doing. There simply was no evidence upon which an instruction of unlawful deprivation of property could be premised, and the trial court did not err in failing to so instruct. See *State v. Warren,* 221 Kan. 10, 557 P.2d 1248 (1976).

This case was well and fully presented to the trial court by both counsel; the defendant was ably and conscientiously represented by dedicated counsel, and his side of the case was meticulously presented, both at trial and upon appeal. We have carefully considered each point raised, but find no prejudicial error.

The judgment is affirmed.

FROMME, J., not participating.