No. 67,487

GARY MORGAN, *Appellant,* v. EUSTAQUIO O. ABAY II, M.D., *Appellee.*

(850 P.2d 840)

Opinion filed April 16, 1993.

*Edward J. Hund,* of Cordry, Hund & Hartman, of Wichita, argued the cause, and *Gregory D. Bell,* of the same firm, was with him on the briefs for appellant.

*Christopher A. McElgunn,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, argued the cause, and *Gary M. Austerman,* of the same firm, was with him on the brief for appellee.

*Thomas L. Theis* and *Martha A. Peterson,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

*Wayne T. Stratton,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, was on the brief for *amici curiae* Kansas Hospital Association and Kansas Medical Society.

*Gary D. White, Jr.,* of Schroer, Rice, P.A., of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

SIX, J.: This is a medical malpractice case. The jury verdict was for the defendant physician. The two issues are: (1) Did the trial court err in allowing a non-party treating physician to testify as an expert witness for the defense when, prior to trial, that physician had been contacted, ex parte, by defense counsel; and (2) did the trial court commit prejudicial error in excluding an admitted exhibit (a demonstrative chart) from the jury room during deliberations?

Plaintiff Gary Morgan alleged in his claim against Dr. Eustaquio O. Abay II, M.D., that the care extended by Dr. Abay, in connection with pituitary tumor surgery, was negligent. Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals upon our own motion).

We reason that the first issue relating to the testimony of a non-party treating physician has not been preserved for appeal and, consequently, is not a proper question for resolution in the case at bar. The trial court's refusal to permit the demonstrative chart which had been admitted as an exhibit to go to the jury room was error; however, the error was not prejudicial.

## Facts

Gary Morgan began experiencing difficulties with his vision. He ultimately was referred to a neurologist who sent him to Dr. Abay, a board certified neurosurgeon. Several tests were conducted by Dr. Abay in an attempt to isolate the cause of Morgan's problems. Dr. Abay diagnosed Morgan as having a pituitary adenoma or tumor, which encased Morgan's right carotid artery and right optic nerve. Dr. Abay told Morgan that without treatment he could die. Morgan was advised to have surgery to remove the growth. The two discussed the risks of surgery. Morgan elected surgery and was admitted to a hospital in Wichita. Dr. Abay explained the possible surgical approaches (pituitary tumor surgery presents a neurosurgeon with essentially two surgical approaches providing access to the pituitary gland area and the tumor site).

Another neurological surgeon, Dr. Paul Stein, M.D., assisted Dr. Abay during the surgery. Portions of the surgery were videotaped. During the process of removing adhesions surrounding Morgan's optic nerve, Dr. Abay nicked Morgan's right internal

carotid artery, which caused bleeding in the brain. Dr. Abay performed a cauterization procedure. Morgan's internal carotid artery was reduced to one-third its normal size as a result of the cauterization.

Dr. Abay treated Morgan during his post-surgical recovery. Morgan developed a variety of complications following the surgery, including paralysis of the left side of his body. He suffered a stroke which caused permanent brain damage. The stroke damaged Morgan's vision and created weakness in his left leg. As a result, Morgan needs a brace on his left foot and ankle in order to walk without twisting his ankle or falling. Since the stroke, Morgan has been incapable of driving a car and is unable to work.

Morgan filed a medical negligence claim against Dr. Abay in which he alleged three theories: (1) negligence in choosing the surgical approach to the tumor; (2) negligence in using the improper method to repair the nicked artery; and (3) negligence in surgical after-care which led to Morgan's stroke.

Before trial, counsel for Dr. Abay contacted Dr. Stein and provided him with Morgan's medical records, CT scans, x-rays, and the videotape of the surgical procedure. Dr. Stein served as a "second pair of hands" for Dr. Abay during the surgery. Dr. Stein had no other involvement with Morgan. Dr. Abay's counsel provided Morgan's counsel with a copy of a letter from Dr. Stein expressing Dr. Stein's opinion that Dr. Abay had not deviated from applicable medical standards. Dr. Abay's counsel stated that Dr. Stein would be called as an expert. Morgan's counsel deposed Dr. Stein. At the deposition, Dr. Stein related the facts surrounding his contact with Dr. Abay's lawyers. Prior to trial, Morgan filed a motion in limine, with a supporting memorandum, to exclude the expert testimony of Dr. Stein. During discovery, counsel for Dr. Abay had contacted Dr. Stein ex parte without the consent of or notice to Morgan, and without a subpoena or other discovery order. (Counsel had secured an order for inspection and reproduction of medical records addressed to all hospitals and physicians.) The trial court denied the motion in limine. Dr. Stein testified at trial, without objection, regarding Dr. Abay's adherence to the standard of care.

Dr. Donald Austin, M.D., who was an expert called by Morgan, used a visual aid when he testified. The aid (plaintiff's Exhibit

13) was a detailed colored diagram, in the form of a demonstrative chart, showing the location of the tumor, various methods of entry, the area of damage to the internal carotid artery, and the area where the stroke occurred. The exhibit was identified in the pretrial order and was shown to Dr. Abay's counsel prior to trial. The trial court did not allow Exhibit 13 to go to the jury room.

### The Motion in Limine

Initially, we must determine if the first of the two issues presented has been preserved for appeal.

On September 6, 1991, four days prior to the trial, Morgan filed a motion in limine which sought to exclude the expert testimony of Dr. Stein. The motion specifically stated that Morgan "moves the Court to exclude from the defense case the proposed expert testimony of Dr. Paul Stein, one of plaintiff's treating physicians, on the issues of standard of care, breach of that standard, and causation." The trial court denied the motion on September 17, 1991. Dr. Stein testified the next day, September 18, 1991. No contemporaneous objection was made to Dr. Stein's testimony at trial. The record does not reflect any discussion regarding the exclusion or admission of Dr. Stein's testimony at any time during the course of the trial.

Dr. Stein's testimony is subject to the contemporaneous objection rule. K.S.A. 60-404. When a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. *Douglas v. Lombardino*, 236 Kan. 471, Syl. ¶ 2, 693 P.2d 1138 (1985). *Lombardino* also was a medical malpractice case. Dr. Pham, a pathologist, performed an autopsy on a woman who died following childbirth. Plaintiffs, the husband and son, filed a motion in limine to exclude the opinion evidence of Dr. Pham and the opinion portion of his report. The motion in limine on the report was denied. At trial another doctor was called and was asked to comment on Dr. Pham's conclusion in the report. Plaintiffs' counsel did not object. We held that the failure to object to the reading of Dr. Pham's conclusion in the report constituted a waiver of any objection to the trial court's denial of the motion in limine. 236 Kan. at 481-82.

The failure to object to Dr. Stein's testimony at trial constitutes a waiver of any objection to the trial court's denial of the motion

in limine. Consequently, the issue of whether a new trial is justified due to the inclusion of Dr. Stein's testimony is not properly before us in the case at bar.

## The Demonstrative Chart

Morgan indicates that when his experts testified they repeatedly used a detailed colored anatomical chart to aid the jury in understanding the complex medical issues involved in the lawsuit. He explains that the diagram, marked plaintiff's Exhibit 13, was identified in the pretrial order and was properly offered and admitted into evidence. Morgan suggests that because his objections to certain defense exhibits were sustained on the basis that those exhibits had not been properly identified, the trial court refused to allow Exhibit 13 to go to the jury during deliberations. He reasons that, due to the complexity of the medical information involved, Exhibit 13 was critical to the jury's understanding of his theory of liability and causation. Morgan contends that Exhibit 13 was definitely relevant in that it assisted in providing proof that Dr. Abay departed from the standard of care and was, therefore, admissible under K.S.A. 60-407(f) because "all relevant evidence is admissible."

Morgan emphasizes that the trial court abused its discretion in prohibiting the exhibit from being viewed by the jury during deliberations. He asserts that once Exhibit 13 was admitted into evidence and utilized by Morgan in his case in chief, the trial court was not justified in keeping it from the jury's consideration. In the conclusion of his brief he states that "[t]his Court must reverse the trial court's ruling in this matter." We assume he seeks a new trial.

Dr. Abay counters by observing that Exhibit 13 was displayed to the jury during the course of the trial. He reasons that whether items are allowed in the jury room during deliberations is a matter within the sound discretion of the trial court. See *Mackey v. Board of County Commissioners,* 185 Kan. 139, 152-53, 341 P.2d 1050 (1959). According to Dr. Abay, after allowing Morgan's counsel full use of Exhibit 13 as a demonstrative aid, the fact that it was not allowed in the jury room is hardly an abuse of the trial judge's discretion warranting a new trial. Dr. Abay emphasizes

that Morgan has failed to explain how he was prejudiced or how the jury was misled or confused.

Exhibit 13 was initially mentioned and used during the testimony of Morgan's expert, Dr. Austin. Immediately thereafter, a discussion regarding the exhibit occurred off the record. Testimony then continued and was interrupted by Dr. Abay's counsel:

"MR. AUSTERMAN: Pardon me, Your Honor, sorry to interrupt, but for the record I would lodge our objection at this time to the drawing as being anatomically inaccurate and inappropriate to depict the structures and/or glands that are displayed there.

"THE COURT: Well, Court's previously gone over with counsel matters with respect to this exhibit, and Court will overrule the objection and exhibit will be received for what it is worth."

Exhibit 13 is neither listed in the appeal record volume index nor included in the record on appeal. Consequently, we are not able to evaluate it. During oral argument, counsel for both parties stated it was admitted at trial. The exhibit was displayed during Morgan's oral argument before this court; however, it was neither left with the Clerk of the Appellate Courts nor added to the record. We have had no opportunity to examine Exhibit 13.

Exhibit 13 was again spoken of near the end of the trial when the attorneys were cleaning up their exhibit admissions. No objection was made when the trial judge explained that he was not going to let several exhibits (apparently including Exhibit 13) go to the jury room.

In *State v. Fenton*, 228 Kan. 658, 667, 620 P.2d 813 (1980), Fenton contended that the trial court erred in allowing the jury to view exhibits a second time prior to its deliberations with only the bailiff in charge to supervise the viewing. We found that once a case is submitted to the jury, the jury is ordinarily given the exhibits to take into the jury room where the jurors can examine the exhibits as many times as they desire. The manner in which exhibits are handled at trial is within the trial court's discretion, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse. Fenton had not demonstrated prejudice as a result of a second viewing. 228 Kan. at 667.

In *State v. Poulos & Perez*, 230 Kan. 512, 639 P.2d 477 (1982), we found no abuse of discretion in the trial court permitting the

jury to listen, in the jury room, to an audio tape recording that had been admitted into evidence. 230 Kan. at 514.

The record does not provide us with the reasons the exhibit was excluded from deliberations. The jury had an opportunity to view the exhibit and formulate opinions during the course of Dr. Austin's testimony. Exhibit 13 was admitted, at trial and, in our view, should have gone to the jury room. However, Morgan has not demonstrated how its exclusion from the jury room resulted in prejudice. We conclude the exclusion was error, but absent a showing of prejudice, the error was harmless. Under the facts of the case at bar, we find no abuse of discretion.

Affirmed.