NOT DESIGNATED FOR PUBLICATION

No. 117,132

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AZUCENA GARCIA-FERNIZA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed March 1, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Jospeh A. Desch, of Topeka, for appellant.

*Ellen Hurst Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

BUSER, J.: Azucena Garcia-Ferniza appeals her conviction in Saline County District Court for interference with law enforcement in violation of K.S.A. 2014 Supp. 21-5904(a)(2). Garcia-Ferniza contends the district court erred by failing to instruct the jury on the lesser included offense of attempted interference with law enforcement. Upon our review of the parties' briefs and the record on appeal, we find no error. Accordingly, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

On the late evening of May 6, 2015, Salina police officers arrived to find a 17-year-old girl lying in the grass, unresponsive, with an apparent gunshot wound to her head. A few hours later, she died from her injuries. Five cartridges that had been discharged from a firearm were found in the nearby street. Shortly thereafter, the police investigation developed Macio Palacio Jr. as a suspect in the killing.

On May 7, 2015, investigating officers went to Garcia-Ferniza's home in Salina. Garcia-Ferniza was Palacio's fiancée, and her home was a known residence frequented by Palacio. After locating and arresting Palacio at the home, the officers removed Garcia-Ferniza, her parents, her brother, and her child from the home while awaiting a warrant to search for and seize the firearm used in the homicide.

Garcia-Ferniza was allowed to reenter the home under the supervision of officers in order to collect personal items, including medicine and medical equipment for her child. Before reentering, however, officers informed Garcia-Ferniza that anything she attempted to remove from the home would be subject to inspection by the officers. Detective Lane Mangels, Officer Megan Hokett, and Detective Matthew Halton supervised Garcia-Ferniza at different times while she was inside the home. The officers watched Garcia-Ferniza going from room to room while looking for clothing, a medical device, medicine, and other items. Garcia-Ferniza would carry items out of the home to be searched and then give them to family members before reentering the home to obtain additional items.

After Garcia-Ferniza made several trips in and out of the home over a period of several minutes, Detective Mangels asked Garcia-Ferniza's father if he would purchase replacement medicine for the child. Garcia-Ferniza's father was agreeable. Detective

2

Mangels went inside the home and informed Garcia-Ferniza, "[O]kay, it's time to go." As he entered the home, the detective noted that Officer Hokett was in the living room and Garcia-Ferniza was partially visible through the kitchen at the west end of the home. After Detective Mangels declared that it was time to go, Garcia-Ferniza moved out of sight and walked toward the bathroom at the west end of the home. Detective Mangels and Officer Hokett promptly followed Garcia-Ferniza.

Upon reaching the bathroom, Detective Mangels saw that Garcia-Ferniza was facing away from the officers. Detective Mangels told Garcia-Ferniza to turn around and then told Officer Hokett to turn Garcia-Ferniza around to face the officers. Detective Mangels noticed that Garcia-Ferniza had pressed her knees together in an awkward position. As a result, Detective Mangels told Officer Hokett to search Garcia-Ferniza. During the search, Garcia-Ferniza turned away and pulled her pants partway down saying, "You can see there's nothing in my pants." Detective Mangels told Officer Hokett to turn Garcia-Ferniza back around and Garcia-Ferniza's pants fell the rest of the way down to her ankles. From this vantage point, Detective Mangels could see the handle of a firearm and said, "That's what I'm looking for." Detective Mangels seized the firearm, whereupon Garcia-Ferniza spontaneously said, "That wasn't the gun." Garcia-Ferniza was arrested and removed from the home.

The seized firearm was a Glock model 30, .45 caliber handgun. There was 1 round in the chamber and 4 rounds in the 10-round magazine. Justin Rankin, a forensic scientist employed by the Sedgwick County Regional Forensic Science Center testified that the fired bullet and five cartridges recovered as part of the homicide investigation were all fired from the Glock handgun recovered from Garcia-Ferniza's left pant leg.

Officer Hokett testified she was standing on the porch while Detective Mangels was outside speaking to Garcia-Ferniza's father. After Detective Mangels informed Garcia-Ferniza that she needed to stop collecting items, Officer Hokett looked inside the

3

home and watched Garcia-Ferniza set down some socks and walk quickly towards the west end of the home. Officer Hokett immediately followed her.

When Officer Hokett reached the west bathroom, Garcia-Ferniza was facing away from the officer. Garcia-Ferniza's hands were not immediately visible because they were inside a cupboard. Detective Mangels joined Officer Hokett while Detective Halton stood behind the other two officers. Officer Hokett ordered Garcia-Ferniza to show her hands. Garcia-Ferniza complied while still facing away from the officers. Officer Hokett noticed that Garcia-Ferniza was standing awkwardly, pressing her knees together while her feet were apart. Garcia-Ferniza was ordered to turn around.

Officer Hokett began to search Garcia-Ferniza's person, beginning with her pockets. During the search, Garcia-Ferniza kept reaching into her pockets and Officer Hokett told Garcia-Ferniza to keep her hands out of her pockets. Officer Hokett, with the assistance of Detective Mangels, then conducted a pat-down search of Garcia-Ferniza's pant legs. Officer Hokett heard Detective Mangels say, "That's what I'm looking for right there." Officer Hokett looked down to see the handle of a handgun sticking out of Garcia-Ferniza's left pant leg. Officer Hokett recalled that Garcia-Ferniza said it "wasn't the gun" and that she only hid the firearm to keep Palacio out of trouble.

The third officer, Detective Halton testified that he followed Officer Hokett and Detective Mangels as Garcia-Ferniza went towards the west end of the home. Upon reaching the west bedroom, Detective Halton saw Officer Hokett, Detective Mangels, and Garcia-Ferniza in the doorway to the bathroom. Garcia-Ferniza's pants were down to her thighs and she was slightly bent over and restrained by Officer Hokett. Garcia-Ferniza said that she did not have anything in her pants, but Detective Halton testified that a firearm was removed from the pants.

4

On March 30, 2016, Garcia-Ferniza was convicted by a jury of interference with law enforcement in violation of K.S.A. 2014 Supp. 21-5904(a)(2). She was sentenced on July 22, 2016, to 11 months' imprisonment, with 12 months' postrelease supervision, and placed on probation for 18 months.

Garcia-Ferniza filed a timely notice of appeal.

FAILURE TO GIVE AN ATTEMPTED INTERFERENCE
WITH LAW ENFORCEMENT INSTRUCTION

For her only issue on appeal, Garcia-Ferniza contends the district court erred by failing to instruct the jury on the lesser included offense of attempted interference with law enforcement. Garcia-Ferniza argues "there was 'some evidence' of an attempt, as the brevity and outright clumsy nature of [Garcia-Ferniza's] 'concealment' of the gun would justify a conviction for attempt, rather than the completed crime." On the other hand, the State argues that, as found by the district court, the evidence showed the crime was complete when Garcia-Ferniza placed the firearm in her pants. As a result, it would have been factually inappropriate and error for the district court to instruct the jury on an attempted crime.

At trial, during the jury instructions conference, Garcia-Ferniza requested an instruction for attempted interference with law enforcement. The State objected to a lesser included instruction on attempt, arguing:

> "Judge, again, I don't think it's supported by the uncontroverted evidence that's been presented to the jury that she hid that gun in her pants. I mean . . . it's not that she's pulling it from the cabinet and going to put it in her pants. She put it in her pants. I think the completed crime was committed."

5

Defense counsel responded that there was "a basis for attempt to be used." However, the district judge agreed with the State, commenting "the evidence is that [Garcia-Ferniza], in fact, did conceal it. I mean, what was presented was that she had placed it inside of her pants."

Defense counsel continued, "[w]ith the outline of a gun visible from the exterior of her pants, which was testified to by law enforcement, that they could see the outline of the gun. I don't believe that's consistent with concealing, which would be hiding." The State responded:

> "Obviously, that gun was concealed in her pants. Even Detective Halton said he didn't see the gun right away. It was when she turned around and her pants start to fall that it becomes obvious that there's a gun inside her pants. And, again, we don't have to show that she did a good job at concealing it, only that she concealed the gun."

The district judge concluded the colloquy with counsel by stating:

> "And [the officers] first noticed [the handgun] because of her stance, the way that she—when she turned around, her knees were together attempting to hold the gun in. I'm going to find that the lesser included offense instruction would not be appropriate, based upon the evidence that was presented."

Our Supreme Court has established the framework for analysis of jury instruction issues:

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to

6

the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011) . . . . [Citations omitted.]'" *Biglow v. Eidenberg*, 308 Kan. 873, 880-81, 424 P.3d 873 (2018).

At the outset, there is no question that Garcia-Ferniza preserved this instructional issue for appellate review. Next, we consider whether an attempt instruction was legally appropriate. K.S.A. 2014 Supp. 21-5109(b) provides: "A lesser included crime is: . . . (3) an attempt to commit the crime charged." We readily conclude that, as a purely legal matter, attempted interference with law enforcement is a lesser included offense of interference with law enforcement.

The critical issue to be resolved in this appeal is whether there was sufficient evidence, viewed in the light most favorable to the defendant, to support the requested attempt instruction. See *Biglow*, 308 Kan. at 880-81.

As a general rule: "An accused has the right to have his theory of the case presented to the jury, and where there is evidence to support a lesser included offense, the court should instruct upon it." *State v. Grauerholz*, 232 Kan. 221, 230, 654 P.2d 395 (1982). See also K.S.A. 22-3414(3) ("In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the . . . lesser included crime."). On appeal, the evidence is viewed in the light most favorable to the party requesting the instruction. *State v. Maestas*, 298 Kan. 765, 779, 316 P.3d 724 (2014).

The crime for which Garcia-Ferniza was charged, K.S.A. 2014 Supp. 21-5904(a), provides that "[i]nterference with law enforcement is . . . (2) *concealing* . . . evidence with the intent to prevent or hinder the . . . prosecution of any person." (Emphasis added.) Under Kansas law, an attempt is "any overt act toward the perpetration of a crime done

by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2014 Supp. 21-5301(a).

On appeal, Garcia-Ferniza argues that an attempt instruction was required because there was insufficient evidence the handgun was concealed in her pants. She claims:

> "[Garcia-Ferniza] was never alone in the residence, literally surrounded by three officers, and there was no possible way she would complete the concealment to prevent or hinder the prosecution of Palacio. All three officers' eyewitness testimony was clear that [Garcia-Ferniza] could never have actually concealed the gun from them to any measurable degree."

The trial record does not support Garcia-Ferniza's factual assertions. As recounted in the Factual and Procedural Background section, all three officers briefly lost sight of Garcia-Ferniza when she rapidly walked towards the bathroom. She obviously had sufficient time to retrieve the murder weapon from some place in the bathroom and put it in her pants leg without being observed. As the district court found, once the firearm was inside her pants leg it was concealed from the officers. This concealment continued while the officers had Garcia-Ferniza turn around and face them, at which time Garcia-Ferniza appeared to have an awkward stance. Garcia-Ferniza was then frisked but it was not until her pants fell around her ankles that the outline of a handgun was visible. This led the officers to finally observe the handle of the weapon inside her pants leg.

The word "conceal" is generally defined as "to put out of sight" or "to keep from another's knowledge." Webster's New World College Dictionary 307 (5th ed. 2014). In a legal context, "concealment" is defined as "[t]he act of removing from sight or notice; hiding." Black's Law Dictionary 349 (10th ed. 2014) Although Garcia-Ferniza's placement of the handgun in her pants was brief and, in Garcia-Ferniza's view, "clumsy," the uncontroverted evidence was that Garcia-Ferniza was concealing the handgun because it was out of sight and hidden until discovered by officers after Garcia-Ferniza

8

was frisked and her pants fell down, revealing the handle of the firearm. Based on this evidence, Garcia-Ferniza committed the completed crime of interference with law enforcement.

As our Supreme Court has stated:  "Where the crime charged is completed, there is no call for an instruction on attempt. *State v. Buggs*, 219 Kan. 203, 206, 547 P.2d 720 (1976)." *Grauerholz*, 232 Kan. at 230. We discern no error in the district court's refusal to instruct the jury on the lesser included offense of attempted interference with law enforcement.

Affirmed.