**AFFIRMED and Opinion Filed December 11, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00683-CR**

**JOSEPH MARSHALL GUTIERREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-83200-2022**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Smith, and Garcia
Opinion by Justice Smith

Appellant Joseph Marshall Gutierrez was convicted by a jury of the second-degree felony offense of online solicitation of a minor for sexual conduct. *See* TEX. PENAL CODE ANN. § 33.021(c), (f). After finding the two punishment enhancement paragraphs true, the jury assessed appellant's punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction and sentence in three issues: (1) the evidence was legally insufficient to support his conviction for online solicitation of a minor, (2) the trial court erred in allowing the State to publish an exhibit by reading the text messages

contained in the exhibit in a "narrative play-like dialogue," and (3) his punishment of confinement for life was excessive and grossly disproportionate in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and article 1, section 13 of the Texas Constitution. For the reasons discussed below, we affirm.

## Procedural and Factual Background

In 2022, Investigator Lee McMillian, as part of his assignment with the Child Exploitation Unit of the Collin County Sheriff's Office, posed as a young female named Peyton on Meet Me, a website or commercial online service designed so people can meet and converse with other people throughout the world. The profile picture used was an age-regressed photograph of a female employee of the sheriff's office. Appellant initiated contact with Peyton through text message to the phone number listed on Peyton's profile. When appellant asked Peyton what she did for a living, Investigator McMillian, acting as Peyton, responded that she was still in school, specifically in tenth grade. Appellant asked how old she was, and Peyton responded that she was almost sixteen. Investigator McMillian then sent appellant two age-regressed pictures of the female who worked at the sheriff's office. The communications quickly turned sexual in nature and lasted for several days before the two arranged to meet at a Super 8 motel in McKinney.

Prior to their meeting, appellant tried to call Peyton numerous times, but Peyton always offered an excuse as to why she was not able to answer. On two

occasions, a female employee of the sheriff's office posed as Peyton and talked to appellant on the phone. Appellant and Peyton also exchanged several more pictures: Investigator McMillian, acting as Peyton, sent another age-regressed picture of the female sheriff's office employee and appellant sent two pictures of himself and two pictures of a male sexual organ.

When appellant arrived at the motel, Investigator McMillian approached him in the lobby and asked him to step outside. Appellant was arrested and taken into custody. When Investigator McMillian searched appellant's pockets, he found a sex toy, specifically a silicone ring to place around the male sexual organ, and a box of condoms.

Appellant was charged with online solicitation of a minor and his case proceeded to trial. The jury found him guilty and found that he had twice been previously convicted of a felony. He was sentenced to life in prison. After his motion for new trial was denied by operation of law, this appeal ensued.

## Sufficiency of the Evidence

Appellant argues in his first issue that the evidence is legally insufficient to support his conviction for online solicitation of a minor. Specifically, he contends that there was insufficient evidence to show that he believed Investigator McMillian, aka Peyton, was younger than seventeen years of age. Although Peyton held herself out as a fifteen-year-old in tenth grade, the website on which appellant found her restricted its users to eighteen and older. Additionally, the profile picture

Investigator McMillian used for Peyton was not conclusive evidence that Peyton was under eighteen and appellant twice spoke with an adult employee of the sheriff's office, not a young child, before he agreed to meet. Furthermore, Investigator McMillian could not eliminate the possibility that appellant was merely role playing or had a fantasy of pretending that Peyton was a minor. Therefore, appellant argues, the jury was presented with a reasonable doubt that appellant actually believed Peyton was a minor and, thus, the jury's guilty verdict was not rational.

In reviewing the legal sufficiency of the evidence, we consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). A criminal conviction may be supported by both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and defer to the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *see also Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Isassi*, 330 S.W.3d at 638. The jury may choose to believe or disbelieve any part of any witness's testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). "When the record supports conflicting inferences, we presume that the factfinder

resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of online solicitation of a minor if the actor, over the internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person. TEX. PENAL CODE § 33.021(c). The penal code definition of "minor" includes not only an individual who *is* younger than seventeen but also an individual whom *the actor believes to be* younger than seventeen. *Id.* § 33.021(a)(1). Tracking the language of the statute, the indictment in this case alleged that appellant knowingly solicited Lee McMillian, a minor, over the internet, by text message, and through a commercial online service, to meet appellant with the intent that McMillian would engage in sexual contact, sexual intercourse, and deviate sexual intercourse with appellant.

There is no dispute that Investigator McMillian was not a minor and that Peyton did not exist. Thus, appellant's sufficiency challenge turns on whether the State presented sufficient evidence to show that appellant believed Investigator McMillian, aka Peyton, was younger than seventeen.

Appellant did not testify at trial and, although he maintains through his counsel's arguments that the evidence raised a reasonable doubt as to whether he believed he was talking to a fifteen-year-old girl, the jury rejected this contention at trial. *See Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). We conclude that there was legally sufficient evidence before the jury to support its verdict.

The evidence at trial showed that Investigator McMillian, aka Peyton, told appellant that he was speaking with a fifteen-year-old, almost sixteen-year-old girl. Investigator McMillian also represented Peyton as a sophomore in high school who lived at home with her mother and would have to pretend she was spending the night with her "bestie" in order to meet up. When Investigator McMillian sent appellant a picture of a young girl, appellant responded, "damn ur beautiful," "if I was to have sex with you I would get into a lot of trouble." Appellant also told Peyton, "this is my first time being with someone under 18." Therefore, appellant admitted in his text messages that he believed he was talking with someone younger than seventeen.

Furthermore, it does not appear from the record that Investigator McMillian included a specific age with Peyton's profile on Meet Me. He acknowledged the terms of service required the user to be eighteen or older and if the site finds out you are under eighteen the site will kick you off and ban you. He testified he gets banned all the time working as an undercover officer. However, there was no evidence that he got banned this particular time or that he communicated Peyton's age to appellant through the website. Instead, appellant initiated contact with Investigator McMillian by texting the phone number associated with the online profile and all their conversations occurred outside of the website's governance. Additionally, Investigator McMillian testified that there were online groups specifically designed for "role-play" and law enforcement stayed out of those areas. In describing the process that generally occurs when conducting these types of investigations, he explained that he uses an age-regressed photograph to create the profile so that the female appeared as a teenager. However, the majority of people, when they reached out and learned they were speaking with a minor, walked away. Appellant did not.

It was within the jury's province to resolve conflicting inferences and weigh the evidence as to whether appellant believed he was arranging to engage in sexual conduct with a person younger than seventeen. *See id.* at 778; *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The evidence is legally sufficient to support the jury's finding that he did and, thus, committed the offense of online solicitation of a minor. *See, e.g.*, *Neill v. State*, No. 05-23-00277-CR, 2024 WL

–7–

3715722, at *5 (Tex. App.—Dallas Aug. 8, 2024, no pet.) (mem. op., not designated for publication) (in concluding evidence was legally sufficient to show appellant believed Investigator McMillian, aka Peyton, was under seventeen, the court explained that "the jury was free to disregard defendant's self-serving statements that Peyton looked older than 15"); *Perales v. State*, 622 S.W.3d 575, 581–82 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (rejecting appellant's argument that evidence showing Plenty of Fish website was supposed to be for users eighteen or older, girl's profile said she was eighteen, and girl's profile picture looked like a twenty-three year old raised a reasonable doubt as to whether appellant believed the girl was younger than seventeen where officer, posing as the girl, told appellant she was sixteen, in school, and lived with her mother); *Maloney v. State*, 294 S.W.3d 613, 618–19 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (concluding evidence was sufficient to support conviction for online solicitation of a minor where undercover officer repeatedly told appellant she was thirteen even though appellant argued that he believed she was an adult woman engaged in role-playing, i.e. pretending to be a thirteen-year-old girl while he pretended to be her "daddy"). We overrule appellant's first issue.

**Publication of State's Exhibit No. 1**

In his second issue, appellant contends that the trial court erred by permitting the State to improperly publish State's Exhibit No. 1 to the jury by allowing the prosecutor and Investigator McMillian to read the text messages contained in the

exhibit in a "narrative play-like dialogue." Appellant asserts that the reenactment was repetitive and more prejudicial than probative because it did not accurately portray the exhibit but, instead, was a gross mischaracterization of the evidence and allowed the State to create audible and verbal conversation that did not exist in State's Exhibit No. 1. "Through hearing the text messages in a play-like narration, combined likely with voices and intonation, the jury was unduly influenced as to the evidentiary weight of the exhibit." In short, appellant argues the reenactment was misleading, caused unfair prejudice, and needlessly presented cumulative evidence.

The manner and means of presenting documentary evidence to the jury is best left to the sound discretion of the trial court. *Wheatfall v. State*, 882 S.W.2d 829, 838 (Tex. Crim. App. 1994). We will not disturb a trial court's ruling on appeal absent an abuse of discretion. *Id.* A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

State's Exhibit No. 1 is a printout of text messages exchanged between Investigator McMillian, aka Peyton, and appellant. After the trial court admitted State's Exhibit No. 1, the prosecutor asked to publish the exhibit to the jury by providing each juror with a copy of the exhibit while also reading the text messages onto the record. Defense counsel objected, first arguing that "with that many copies of the same document floating around, I just think it would add for confusion." Defense counsel asked, "Wouldn't it be better to just post it?" The trial court stated

that publishing was appropriate and allowed the copies to be distributed to the jury. The State assured the court that it would retrieve the copies after it finished publishing the content.

The State then asked Investigator McMillian a few questions regarding how the conversation was initiated, when Peyton's age was revealed, when the conversation turned to sex, which number represented who in the exchange, and when they established a time to meet. The prosecutor next explained she would read the messages to publish them, specifically that she would read appellant's messages and Investigator McMillian would read Peyton's messages. Defense counsel objected arguing that the jury had already been given copies of the text messages and the exhibit had already been published; thus, rereading the exhibit was akin to a question being asked and answered and should not be repeated. Defense counsel asserted, "The witness should be free to be able to testify about what's in there, but to turn it into a narrative like a play, I think is going to be more prejudicial than probative and repetitive." The trial court overruled defense counsel's objection and the prosecutor read the messages sent by appellant while Investigator McMillian read the messages he sent as Peyton. During the reading of the text messages, the prosecutor posed other questions to Investigator McMillian concerning the messages and offered other exhibits for admission.

Rule 611 provides, "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make

–10–

those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Appellant has not directed us to any cases, nor have we found one, in which an appellate court concluded that the trial court abused its discretion by allowing publication of text messages by reading them. In fact, it is common practice to publish written documents to the jury in this way. *Wheatfall*, 882 S.W.2d at 837–38; *see also Hanks v. State*, No. 09-23-00132-CR, 2024 WL 4142839, at *2 (Tex. App.—Beaumont Sept. 11, 2024, no pet.) (mem. op., not designated for publication) (noting prosecutor and undercover officer read the text message exchange between appellant and the undercover officer, who was posing online as a fourteen-year-old girl, aloud to the jury); *Walter v. State*, 581 S.W.3d 957, 977 (Tex. App.—Eastland 2019, pet. ref'd) (noting police officer read approximately sixty-five text messages to the jury); *Martini v. State*, No. 05-17-00639-CR, 2018 WL 3598978, at *1 (Tex. App.—Dallas July 27, 2018, no pet.) (mem. op., not designated for publication) (noting many of the text messages between appellant and the child victim, including some that were sexually graphic, were read to the jury); *Bass v. State*, No. 05-13-00518-CR, 2015 WL 3415636, at *2 (Tex. App.—Dallas May 28, 2015, pet. ref'd) (mem. op., not designated for publication) (noting prosecutor and investigating officer read incriminating portions of the text messages from the victim's and the co-actor's phones to the jury).

Furthermore, the record on appeal does not support appellant's argument that the prosecutor and Investigator McMillian read the text messages in such a way that resulted in a "gross mischaracterization of the evidence." The reading tracks the admitted messages, and the record does not show that the reading of the exhibit was a dramatical re-enactment of the conversation. In fact, defense counsel never objected or raised a complaint as to how the messages were being read to the jury. Moreover, we disagree that reading the text messages aloud while letting the jury follow along on a printed copy was repetitive or needlessly cumulative. It was, in effect, simultaneous and simply allowed the jury to hear the words exchanged as well as see the messages as written. Therefore, we cannot conclude that the trial court abused its discretion by permitting the State to publish the text messages to the jury by reading them aloud. We overrule appellant's second issue.

## Punishment Assessed

Appellant argues in his third issue that the jury's punishment verdict of life imprisonment was excessive and grossly disproportionate in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and article 1, section 13 of the Texas Constitution. Because there is no significant difference between the protections afforded by the state and federal constitutions with respect to cruel and unusual punishments, *see Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997), we address appellant's challenges under the Eighth Amendment

–12–

of the United States Constitution and article 1, section 13 of the Texas Constitution together.

A sentence that is grossly disproportionate to the crime violates the Eighth Amendment's ban on cruel and unusual punishment. *Graham v. Florida*, 560 U.S. 48, 59–60 (2010). "[A] sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case." *State v. Simpson*, 488 S.W.3d 318, 322–23 (Tex. Crim. App. 2016). Generally, a sentence that falls within the statutory limits, including punishment that has been enhanced to a higher range under a habitual-offender statute, is not excessive, cruel, or unusual. *Id.* at 323.

The proportionality of a sentence is evaluated by comparing the gravity of the offense against the severity of the sentence. *Graham*, 560 U.S. at 60. The gravity of the offense includes not only the harm threatened to the victim and the culpability of the defendant, but also the defendant's prior offenses regardless of whether they were adjudicated. *Simpson*, 488 S.W.3d at 323. In the rare case in which the offense-to-sentence comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction, as well as sentences imposed for the same crime in other jurisdictions. *Graham*, 560 U.S. at 60. If this second comparison validates the initial inference that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Id.*

Appellant acknowledges that with his two prior convictions his punishment range was enhanced from that of a second-degree felony—imprisonment of not more than twenty years or less than two[1]—to imprisonment for life or a term of not more than ninety-nine years or less than twenty-five.[2] He also acknowledges that his priors were for serious felony offenses. However, appellant asserts his life sentence is grossly disproportionate to the crime because the victim in this case was a sheriff's investigator posing as a fifteen-year-old female, not a real child who was harmed. Furthermore, the State did not produce a witness in the punishment phase, therefore there was no testimony regarding the egregious nature of any of his prior felonies. The evidence was strictly documentary.

The State responds that appellant's argument ignores the fact that the offense of online solicitation of a child for sex poses a substantial threat to society even when the defendant is actually soliciting an undercover officer, not a minor. *See Saravia v. State*, No. 02-22-00138-CR, 2023 WL 2805902, at *4 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication). We agree. Although appellant did not get the chance to act on his intentions, he described to Peyton in graphic detail the sexual acts he wanted to perform on her, including taking her virginity. He also arrived at the motel to meet Peyton with a sex toy and

---

[1] *See* TEX. PENAL CODE § 12.33(a).
[2] *See* TEX. PENAL CODE § 12.42(d).

condoms. Thus, the threatened harm was serious and appellant's culpability was well-established.

As to the evidence of appellant's priors, the State argues "appellant's criminal history shows he is not just a man with a persistent aversion to the law; he is a violent man who preys on others and, in particular, children." The State contends that "leniency shown to appellant in the past did not curb his deviant sexual appetite or inspire him to walk the straight and narrow." The State made a similar argument to the jury when it asked for a life sentence below, after establishing that appellant had previously been unsuccessful on deferred adjudication community supervision and that his prior five-year prison sentences had not deterred him from committing the crime at issue.

While appellant is correct that there were no live witnesses to describe in detail the nature or impact of his prior felonies, the punishment evidence showed that his priors included indecency with a child by exposure, failure to register annually as a sex offender for life, and aggravated assault family violence causing serious bodily injury with a deadly weapon—a knife. The victim in his indecency case was nine years old. And, as the State duly notes, failure to register as a sex offender prevents authorities from monitoring and limiting an offender's access to other potential victims.

We conclude, in light of appellant's criminal history, which not only showed a proclivity toward engaging in sexual conduct with minors but also committing a

violent act within the home, that this is not one of those "rare" cases where we can conclude that his life sentence is grossly disproportionate to his crime of soliciting a minor for sex, which was enhanced with two prior felonies. *See Simpson*, 488 S.W.3d at 323 (noting the Supreme Court of the United States had only twice held that a non-capital sentence imposed on an adult defendant was constitutionally disproportionate). His sentence may have been harsh, but it was not unconstitutional. *See id.* at 324. We overrule appellant's third issue.

### Conclusion

Having overruled each of appellant's three issues on appeal, we affirm the judgment of the trial court.

220683f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Craig Smith//
CRAIG SMITH
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH MARSHALL
GUTIERREZ, Appellant

No. 05-23-00683-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-83200-
2022.
Opinion delivered by Justice Smith.
Justices Pedersen, III and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 11th day of December, 2024.